(November 12, 1987)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDRE JONES, Appellant.—Mahoney, P. J. Appeal from a judgment of the County Court of Ulster County (Vogt, J.), rendered November 14, 1984, upon a verdict convicting defendant of the crimes of attempted escape in the first degree and promoting prison contraband in the first degree.

At about 8:30 P.M. on February 11, 1984, Correction Officer George Armstrong was working at Eastern Correctional Facility in Ulster County when he was requested by an inmate to investigate the reason why a ceiling panel in his cell had been forced up. Following the verification of this report, all inmates were locked in their cells for a head count. The count revealed that defendant was missing from his cell.

Correction Officer Donald Kenyon, accompanied by 4 or 5 other officers, then began to search the area above the cell where the ceiling panel had been found forced up. According to Kenyon's testimony, the search revealed that, in a far corner of the second floor above the visiting room entrance, there was what Kenyon described as a "turret situation" measuring about 12 to 15 feet across and 40 to 55 feet deep. There, the searching officers saw defendant sitting on a piece of conduit pipe. The officers also found two links of wire tied to a steel beam and dropped over the side into the turret. Both links of wire were approximately 30 to 40 feet in length and were knotted so as to form a type of ladder.

Noting that defendant was having difficulty walking, the officers removed him from the turret and took him to the

facility hospital. There, a strip search uncovered a telephone address book and 3 or 4 layers of clothing, as well as a bag containing two screwdrivers and a pair of cutting pliers. The following day, an additional 30 feet of wire, knotted at regular intervals, and a hand-drawn map depicting the roads outside the prison were found at the bottom of the turret.

Defendant was thereafter indicted on charges of attempted escape in the first degree and promoting prison contraband in the first degree. After a jury trial, defendant was found guilty as charged and was sentenced to concurrent indeterminate terms of imprisonment of 3½ to 7 years and 2 to 4 years, the two sentences to be served consecutively with the sentence defendant was already serving pursuant to his prior conviction for murder in the second degree. This appeal by defendant ensued.

Turning to the first issue raised by defendant, we note that a trial court is required to order a psychological examination of a defendant when it is "of the opinion that the defendant may be an incapacitated person" (CPL 730.30 [1]). Here, we hold that County Court did not abuse its discretion in failing to order an examination pursuant to CPL 730.30 (1). The fact that in 1974, 10 years previously, defendant may have been found not guilty of certain charges by reason of mental disease or defect, without more, is too remote in time to raise a reasonable doubt as to his ability to understand the charges against him or to assist in his own defense (see, People v Armlin, 37 NY2d 167, 171; People v Smyth, 3 NY2d 184). There is no evidence in the record that defendant has been under psychiatric care or treatment in the last decade. Further, defendant's testimony at trial failed to indicate any signs that he was incapacitated.

Next, we hold that County Court did not err in charging the jury on the definition of "dangerous contraband". In explaining the jury's option to convict defendant of the lesser included offense of promoting prison contraband in the second degree, County Court stated that "dangerous contraband consists of any item * * * likely to [facilitate] escape or cause disorder, danger or physical injury". Defense counsel's objection to this part of the charge is premised on his claim that since "escape" is not found in the definition of either first or second degree promoting prison contraband, it should have been left for the jury to decide whether the term "security" as used in Penal Law § 205.00 (4) meant "escape". We disagree.

County Court's charge carefully explained to the jury the

distinction between dangerous contraband and contraband. Dangerous contraband, the court stated, is that which is "capable of such use as may endanger the safety or security of a detention facility or any person therein" (Penal Law § 205.00 [4]). Contraband, in turn, is defined as "any article or thing which a person confined in a detention facility is prohibited from obtaining or possessing by statute, rule, regulation or order" (Penal Law § 205.00 [3]). Thus, while the statutory definition of the two terms leaves no room for ambiguity, County Court created the instant problem by stating that the definitions of dangerous contraband include items that facilitate escape, a definition not expressly found in the Penal Law. However, in our view such a definition is a proper example of dangerous contraband since such an item would clearly "endanger the safety or security of a detention facility" (Penal Law § 205.00 [4]; *see,* Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 205.00, at 435). Such a definition did not invade the province of the jury, which ultimately had to determine whether the items found in defendant's possession constituted dangerous contraband.

Next, defendant did not disprove the prosecution's evidence indicating that defendant received the revised rule book on Standards of Inmate Behavior since all inmates routinely receive a copy. It is now well established that the listing of items in the rule book which inmates are prohibited from possessing, such as contraband, may be considered an "order" within Penal Law § 205.00 (3) *(see, People v Anderson,* 127 AD2d 885, 886; *People v Motley,* 119 AD2d 57, 59, *affd* 69 NY2d 870). Thus, defendant may clearly be convicted of possessing prison contraband despite the fact that the revised book may not, at the time of the offense, have been on file with the Secretary of State *(see also, People v Simms,* 124 AD2d 349, *lv denied* 67 NY2d 886; *People v Brown,* 123 AD2d 473, 474).

We also hold that defendant's conviction of the crime of attempted escape in the first degree was supported by legally sufficient evidence. To be convicted of an attempt to commit a crime, the evidence must show that the defendant engaged in conduct which tended to effect the commission of the crime *(see,* Penal Law § 110.00). The element of intent may properly be inferred from a defendant's conduct and the surrounding circumstances *(see, People v Bracey,* 41 NY2d 296, 301).

Here, there was overwhelming evidence to support the jury's verdict on the charge of attempted escape in the first degree. Defendant was discovered in the attic area of a build-

ing that was strictly off limits to inmates. When found, defendant was at the bottom of a turret into which he had climbed with the aid of two lengths of knotted wire. He was found dressed in multiple layers of clothing and possessing a telephone address book, two screwdrivers and pliers. Further, torn-up sheets, a pair of gloves and a hand-drawn map of the roads outside the facility were discovered near where defendant was apprehended. Thus, viewing the evidence in the light most favorable to the prosecution, as we must *(see, People v Kennedy,* 47 NY2d 196), there was clearly sufficient evidence to find defendant guilty of attempted escape in the first degree.

We have considered defendant's other arguments and find them to be without merit.

Judgment affirmed. Mahoney, P. J., Casey, Weiss, Yesawich, Jr., and Levine, JJ., concur.