[711 NYS2d 196]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TIMOTHY FAIR, Appellant.

Third Department, June 29, 2000

### APPEARANCES OF COUNSEL

*Diane V. Bruns,* Ithaca, for appellant.

*John R. Trice, District Attorney* of Chemung County, Elmira (*Christopher P. Baker* of counsel), for respondent.

### OPINION OF THE COURT

MERCURE, J. P.

On October 31, 1997, while defendant was an inmate at Elmira Correctional Facility in Chemung County, his prison cell was randomly selected and searched as part of a standard security measure employed by the facility. During the inspection, conducted by Correction Officer Bart Wagner, Wagner looked beneath defendant's sink and found a piece of cardboard placed against the wall. Moving the cardboard revealed an 18-inch hole in the wall. Approximately 12 inches inside the hole, Wagner found State-issue green inmate pants and a shirt, both stuffed with newspapers to resemble a dummy. The inmate shirt bore defendant's last name and inmate identification number. Further investigation disclosed that the hole directly accessed a "pipe chase," a vertical service shaft that extended all the way from the basement to the roof of the cell block.

Correction Sergeant John Randall was the supervisor in charge of the "underground" investigation. Randall found mortar and brick rubble in the cellar immediately beneath defendant's cell, and footprints on the dusty basement floor enabled Randall to track a route through the basement tunnel system, then into a crawlspace and ultimately to the floor of an unused turret at the front of the facility. Among the items discovered along the route were a padlock that had been removed from a steel door leading to another basement area, a broken metal pipehanger shaped like a tool, and a lock and chain that had previously been affixed to the crawlspace door. Two inmate winter coats, one bearing the name "Fair," and correspondence addressed to "Timothy" were found in the crawlspace. Below the turret, Randall observed a makeshift lantern and a 42-foot electrical "buffer" cord hanging down from the upper part of the turret. Climbing the cord provided access to a small window approximately 25 feet up the turret wall. Further examination revealed that the window flashing

and screen were bent and the window was loose. Notably, when dropped through the window, the buffer cord easily reached the ground outside.

A Grand Jury indicted defendant for a single count of attempted escape in the first degree, asserting that defendant had, in concert with another, attempted to escape from the facility. The action proceeded to trial and, at the conclusion of the People's case, defendant moved to dismiss the indictment based on, *inter alia*, the People's failure to offer any evidence that defendant had acted in concert with any other individual. Although agreeing that no evidence had been offered to support the acting-in-concert allegation, County Court denied the motion and charged the jury on the theory that defendant had acted as a principal. The jury rendered a verdict convicting defendant of attempted escape in the first degree and County Court sentenced him to a consecutive prison term of 1½ to 3 years. Defendant appeals.

■ We affirm. Initially, we reject the contention that the trial evidence was not legally sufficient to support the verdict convicting defendant of attempted escape in the first degree or that the verdict was against the weight of the evidence. Although defendant predicates much of his analysis on the fact that the evidence linking him with the subject crime was wholly circumstantial, it is established law that "[i]n making this determination, as to both weight and sufficiency, '[a]n appellate court does not distinguish between direct or circumstantial evidence' " (*People v Bush*, 266 AD2d 642, 643, *lv denied* 94 NY2d 917; quoting *People v Davis*, 260 AD2d 726, 729, *lv denied* 93 NY2d 968; *see, People v Rossey*, 89 NY2d 970, 971-972; *People v Cabey*, 85 NY2d 417, 421). In our view, there was ample evidence adduced at trial that defendant came dangerously close to escaping from the prison facility, thereby providing sufficient legal support for the jury's verdict finding him guilty of attempted escape in the first degree (*see, People v Bracey*, 41 NY2d 296, 299-300; *see also*, Penal Law § 110.00).

As of October 31, 1997, the date of discovery of the hole in defendant's cell, defendant had fashioned an escape route to the grounds of the facility by utilizing the basement tunnel system and the buffer cord affixed to the turret in such a way that defendant could gain access to the turret window and then to the ground outside. There was further evidence that the locks securing the doors, which would normally block such access in the tunnels, had been deliberately broken and removed. Moreover, based on the presence of a winter coat

bearing defendant's name and correspondence addressed to "Timothy" in a crawlspace off the tunnel system, it can be readily inferred that it was defendant who created the escape route and was intending to use it to escape. Notably, Wagner testified that inmates have no access to other inmates' cells or their clothing, thereby permitting the jury to conclude that defendant had been present in the crawlspace.

In order to constitute an attempt, "[t]he act need not be 'the final one towards the completion of the offense' * * * but it must 'carry the project forward within dangerous proximity to the criminal end to be attained' " (*People v Bracey, supra*, at 300 [citations omitted]; *see*, Penal Law § 110.00). Contrary to defendant's assertion, it was not necessary that he actually be in the process of escaping at the time of his apprehension. Although our research discloses no cases involving a defendant convicted of attempted escape who was not apprehended in an unauthorized location (*see, People v Rivera*, 151 AD2d 789, 790; *People v Jones*, 134 AD2d 701, 703-704, *lv denied* 71 NY2d 969; *People v Seaton*, 119 AD2d 600, *lv denied* 68 NY2d 672; *People v Hodge*, 76 AD2d 985, *mod on other grounds* 53 NY2d 313), defendant has provided no legal authority to support his contention that a conviction of attempted escape may not be sustained on facts such as those presented here, i.e., where the escape route has been completed but the defendant is not actually in the process of escaping at the time of his apprehension. We conclude that, by creating the escape route, defendant placed himself in a position where he was capable of escaping at any time and thus was dangerously close to completing an escape. As such, viewed in a light most favorable to the People, there was a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion reached by the fact finder on the basis of the evidence at trial (*see, People v Rossey, supra*, at 971; *People v Williams*, 84 NY2d 925, 926; *People v Davis, supra*, at 729).

We likewise conclude that, "reviewing the evidence in a neutral light to make an independent determination of the relative probative value of inferences that may be drawn from the testimony" (*People v Huntley*, 259 AD2d 843, 846, *lv denied* 93 NY2d 972; *see, People v Bleakley*, 69 NY2d 490, 495), the verdict is not against the weight of the evidence. As previously noted, undisputed evidence established that from his cell, defendant had unobstructed and unauthorized access to the grounds outside the facility, there was a "dummy" stuffed into the hole in his cell, his clothing and other articles were found

in the tunnel system and he was the only person to have access to his cell and his clothing. It could be readily inferred from this evidence that defendant was attempting to escape at the time of discovery of his escape route.

Turning briefly to defendant's remaining contentions, we first reject the attack on the chain of custody of clothing found in defendant's cell. Notwithstanding some deficiencies in the chain of custody, Wagner's testimony that the clothing contained in the evidence bag appeared to be in the same state as when discovered satisfied the People's burden of showing that the evidence was identical to that involved in the crime and had not been tampered with (*see, People v Julian*, 41 NY2d 340, 342-343; *People v Everspaugh*, 171 AD2d 950, 951, *lv denied* 78 NY2d 965). Notably, defendant does not dispute this testimony and makes no assertion that a "prejudicial alteration" of the evidence occurred any time before trial (*People v Julian, supra*, at 344).

As a final matter, we are not persuaded that County Court erred in charging the jury solely on the theory that defendant acted as a principal notwithstanding the indictment's allegation that defendant had acted in concert with another. Given that there is no legal distinction between principal and accessorial liability, County Court was permitted to charge on the alternate theory, even though that theory was not expressly set forth in the indictment (*see, People v Rivera*, 84 NY2d 766, 771; *People v Guidice*, 83 NY2d 630, 637; *People v Watrous*, 270 AD2d 651, 654; *People v Davis*, 256 AD2d 200, 201, *lv denied* 93 NY2d 898; *People v Fullard*, 233 AD2d 757, *lv denied* 89 NY2d 1092; *People v Adorno*, 216 AD2d 686, 687, *lv denied* 86 NY2d 839, *lv denied sub nom. People v Jiminez,* 86 NY2d 843).

CREW III, PETERS, SPAIN and MUGGLIN, JJ., concur.

Ordered that the judgment is affirmed.