John DOE, Plaintiff–Appellant,

v.

Al SIMON, Gerald Szachara, Alvin Epstein, Thomas DiStefano, Brion D. Travis, John Paulus, Martin Horn, Edward Mruczek and Raul Russi, Defendants–Appellees.

Docket No. 99–0282

United States Court of Appeals, Second Circuit.

Argued: April 4, 2000

Decided: July 24, 2000

Amy I Kroe, New York, NY, for Plaintiff–Appellant.

Deon J. Nossel, Assistant Solicitor General, New York, N.Y. (Eliot Spitzer, Attorney General, Michael S. Belohlavek and Mark S. Gimpel, Assistant Solicitors General, of counsel), for Defendants–Appellees.

Before WINTER, Chief Judge, OAKES and WALKER, Circuit Judges.

OAKES, Senior Circuit Judge:

Plaintiff John Doe brought due process and ex post facto claims against the defendants, all of whom were officials with the New York State Division of Parole during the relevant time. Doe's claims were based on the imposition of the requirement that Doe, as a convicted sex offender, secure an approved residence before his conditional release from prison. The United States District Court for the Southern District of New York, John S. Martin, Jr., *Judge*, granted summary judgment in favor of the defendants and dismissed Doe's

complaint on the grounds that he had no constitutionally protected liberty interest in being released on his conditional release date and that the approved residence requirement was not a law prohibited by the Ex Post Facto clause. Because we find there was not a due process violation in this case, we affirm the decision of the district court.

## BACKGROUND

Doe was convicted of first-degree sodomy in 1988 and sentenced to an indeterminate prison term of five to ten years. At the time of the sodomy offense, Doe was on probation for a prior conviction of third-degree rape. During his incarceration, Doe was disciplined on three occasions for various infractions, including possession of marijuana.

In April 1993, Doe appeared before the Board of Parole for consideration of discretionary release on parole. The Board denied Doe's release because of the seriousness of the offense he committed while on probation, his failure to abide by prison rules, his use of drugs, and his past criminal record. The Board determined that releasing Doe would pose a threat to the community and imposed special conditions in anticipation of Doe's conditional release in February 1995. These conditions did not include securing an approved residence.

New York law provides for the conditional release of inmates as follows:

A person who is serving one or more than one indeterminate or determinate sentence of imprisonment shall, if he so requests, be conditionally released ... when the total good behavior time allowed to him ... is equal to the unserved portion of his term.... The conditions of release, including those governing post-release supervision, shall be such as may be imposed by the state board of parole in accordance with the provisions of the executive law.

N.Y. Penal Law § 70.40(1)(b) (McKinney Supp.2000). The Board of Parole shall have "the power and duty of determining the conditions of release" with respect to the individual inmate. N.Y. Exec. Law § 259–c(2) (McKinney Supp.2000). The pertinent regulations establish that the Board may impose special conditions either before or after the conditional release occurs. *See* 9 N.Y.Comp.Codes R. & Regs. tit. 9, 8003.3 (2000).

In 1994, the Division of Parole, acting pursuant to powers granted to it by the Board, implemented a new supervision plan for the release of sex offenders based on the theory that anonymity increases the likelihood of additional offenses. One of the elements of this supervision plan is the requirement that an offender obtain a residence, approved by the Division of Parole, in which the offender can be supported in his treatment and kept away from potential victims by a responsible adult who will cooperate with the parole officer.[1]

In December 1994, the Division of Parole, as part of its supervision plan for Doe's conditional release, began to work with him to secure an approved residence. Although an approved residence was not one of the formal conditions of release imposed by the Board of Parole in April 1993, Doe was informed in December 1994 that failure to obtain one could prevent him from being released on his conditional release date of February 14, 1995. From December 1994 through the first half of February 1995, the Division of Parole investigated several residences proposed by Doe, all of which it rejected as unsuitable.

The day before Doe's conditional release date, the Division of Parole requested that the Board of Parole add to Doe's release two special conditions concerning an ap-

---

1. Also in 1994, the Division of Parole published Guidelines for the Supervision of Sex Offenders. The Guidelines were designed to formalize the notification practice by which schools, childcare agencies, and neighbors are informed when a sex offender is released into the community. The Guidelines do not mention the securing of approved residences.

proved residence. The Board accepted and imposed the approved residence conditions, which most relevantly required Doe to reside only in a residence approved by the Division. Because Doe did not satisfy the approved residence conditions by his conditional release date of February 14, 1995, he was not released. Instead, he was released on May 23, 1995, after he proposed a residence that was investigated and approved by the Division of Parole.

Doe brought suit in May 1996, claiming that his incarceration of 98 additional days beyond his conditional release date violated his right to due process because unfair release requirements were imposed upon him without benefit of notice and a hearing. Doe also claimed that the approved residence requirements violated his right to be free from ex post facto laws. After cross-motions for summary judgment were filed, the district court granted the defendants' motion on August 27, 1999, holding that Doe did not have a liberty interest in being conditionally released before obtaining an approved residence and that the Division of Parole's sex offender policy did not constitute a law prohibited by the Ex Post Facto Clause. This appeal followed.

### DISCUSSION

■ We review *de novo* the district court's decision to grant summary judgment to the defendants on due process and ex post facto grounds. *See Kalwasinski v. Morse*, 201 F.3d 103, 105 (2d Cir.1999) (per curiam).

The district court rested its due process holding on the finding that Doe did not meet the requirements for establishing a constitutionally protected liberty interest under *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Rather than reach the thorny question of whether a liberty interest existed here, we conclude that even if one did, Doe received sufficient process to satisfy his constitutional rights. We therefore affirm on that basis the district court's grant of summary judgment to the defendants.

It is undisputed that under New York law the Board of Parole is entitled to impose conditions on the conditional release of an inmate such as Doe. *See* N.Y. Penal Law § 70.40(1)(b); N.Y. Exec. Law § 259–c(2); 9 N.Y. Comp.Codes R. & Regs. tit. 9, § 8003.3. Indeed, at oral argument, counsel for Doe conceded that the approved residence conditions imposed upon Doe did not *per se* violate his due process rights—rather, it was the manner in which these conditions were imposed that gave rise to Doe's due process claims. This case thus turns on the narrow question whether due process was satisfied when the Division of Parole informed Doe of, and ultimately imposed upon him, the approved residence conditions.

It has long been recognized that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). In *Drayton v. McCall*, 584 F.2d 1208 (2d Cir. 1978), we applied this teaching to parole rescissions to hold that due process in that context included written notice, a hearing at which the defendant can confront witnesses and present evidence, and a written statement of the reasons for revoking parole. *See id.* at 1219–20; *see also Green v. McCall*, 822 F.2d 284, 290–92 (2d Cir.1987) (affirming validity of *Drayton*'s analysis after intervening Supreme Court decisions). Doe contends that the imposition of approved residence conditions by the Division of Parole should be given the same level of due process as parole rescissions.

■ We are unwilling to import wholesale the due process requirements for parole rescissions into the admittedly different arena of conditional release. Acknowledging that "due process is flexible and calls for such procedural protections as the particular situation demands,"

*Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), we find that the process due to Doe in this case was, at minimum, notice that he would not be released without an approved residence, an explanation of why this special condition was being imposed, and an opportunity to dispute the grounds for application of the special condition. *See Kim v. Hurston,* 182 F.3d 113, 118–19 (2d Cir.1999) (identifying the minimal due process for removal from work release program). We therefore turn to whether these procedural safeguards were met in Doe's case.

■ The record supports the conclusion that Doe was put on notice in December 1994—two months before his conditional release date—that as part of his supervised release program, he was required to propose possible residences to which he could, subject to approval, be released. Starting at that time, the Division of Parole worked with Doe to find an approved residence, investigating all of his proposals. An affidavit from his parole officer establishes that Doe was told on February 1, 1995, "that there was a possibility that he would not be released unless he had a residence approved by the Division" and that Doe should make a list of possible residences "to obviate the possibility that he would not be released." The parole officer sent an e-mail to his supervisor the same day stating that the "[i]mplications of no proposal [of residences] were explained" to Doe. These actions by the Division of Parole were sufficient to notify Doe of the significance of his finding an approved residence.

The record also satisfies us that Doe knew why the approved residence condition was being imposed and had ample opportunity to contest that it should not be applied to him. As a convicted sex offender, Doe was subject to the supervision plan developed by the Division of Parole and had this plan explained to him in December 1994. Nothing in the record before us indicates that Doe challenged the grounds for imposing the approved residence condition at any time.

Doe's due process argument essentially boils down to the question of timing. Because the requirement of an approved residence was not formally made a special condition of Doe's release until the day before his conditional release date, he argues that he did not *know* until that time that he would not be released without an approved residence. Although we acknowledge that the better procedure would have been to formalize the approved residence condition at an earlier date, we find that the notice given to Doe and the efforts made by Doe and the Division of Parole to find an approved residence starting in December 1994 were sufficient to meet the demands of due process in this case.

We have considered Doe's remaining arguments, including his arguments with respect to ex post facto laws, and find them to be without merit.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.