■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY A. BATES, Appellant. [751 NYS2d 73] —Cardona, P.J. Appeals (1) from a judgment of the County Court of St. Lawrence County (Nicandri, J.), rendered April 10, 2000, upon a verdict convicting defendant of the crime of burglary in the third degree, and (2) by permission, from an order of said court, entered August 15, 2001, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

Defendant was convicted, following a jury trial, of the crime of burglary in the third degree stemming from the February 8, 1999 theft of nine goats from sheds located on Duane Fleury's farm in the Town of Potsdam, St. Lawrence County. Defendant was sentenced, as a predicate felon, to an indeterminate prison term of 2 to 4 years. Following sentencing, defendant moved to vacate the judgment pursuant to CPL 440.10 (1) (f) and (h), claiming, inter alia, that his counsel from the Public Defender's office had an undisclosed conflict of interest. County Court denied the motion, without a hearing, finding defendant's allegations insufficient. Subsequently, this Court granted defendant's motion for leave to appeal the denial of his CPL 440.10 motion and consolidated it with the appeal from the judgment of conviction.

Defendant argues that the evidence was legally insufficient to support the jury's verdict. A review of the trial evidence in a light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621) reveals that, on the night before this theft, defendant, with whom Fleury had previously done business, became angry when Fleury refused to sell him additional goats. The next morning Fleury discovered the thefts and observed vehicle tracks, footprints and hoofprints in the snow near the sheds. He contacted State Trooper Geremy Cope who, upon investigating, also observed the tracks and the prints. Fleury suspected defendant and John Marshall, who had accompanied defendant to his farm the previous night. He believed that they were going to sell the goats to Camara's Auction House in Swansea, Massachusetts, and reported that to the State Police. As a result, upon their arrival, defendant and Marshall were met by members of the Massachusetts State Police who found goats in their possession. Subsequently, some of the goats were identified as belonging to Fleury.

Upon questioning, Marshall implicated himself and defendant in the thefts along with defendant's son, Larry Bates Jr. (hereinafter Bates), and defendant's girlfriend's son, Michael Fenner. Marshall subsequently pleaded guilty to petit larceny and testified to defendant's role in the burglary. Bates and Fenner testified how they entered the sheds with Marshall to steal the goats at defendant's direction while he drove Marshall's truck. Other witnesses, not participants in the crime, testified that they had been initially induced by defendant out of fear to lie to the police in order to shield him from prosecution. In our view, the foregoing evidence establishes a valid line of reasoning and permissible inferences from which a rational jury could find defendant guilty of burglary in the third degree beyond a reasonable doubt under an accomplice theory of liability (*see* Penal Law §§ 20.00, 140.20; *People v Bleakley*, 69 NY2d 490, 495).

Defendant further claims that the People failed to adequately corroborate the accomplice testimony of Marshall, Fenner and Bates. Nonaccomplice evidence need not establish all elements of the crime (*see* CPL 60.22 [1]; *People v Steinberg*, 79 NY2d 673, 683). The corroboration requirement is satisfied if the nonaccomplice evidence "tends to connect a defendant to the crime in a manner sufficient to satisfy the jury that an accomplice is telling the truth" (*People v Crow*, 284 AD2d 653, 653, *lv denied* 96 NY2d 900; *see People v Steinberg*, *supra* at 683). Here, the testimonies of Fleury, Cope, Dawn Fenner, Sandra Marshall and Melissa Fenner tended to connect defendant to the crime and "harmonized with the narrative provided by the accomplices" (*People v Hawley*, 286 AD2d 559, 561; *see People v Smith*, 55 NY2d 945, 946). Therefore, sufficient corroboration was present.

Defendant also contends that the verdict was against the weight of the evidence. Since we have determined that a different result would have been reasonable, we have conducted "our own independent review of the evidence presented" (*People v Taylor*, 276 AD2d 933, 936, *lv denied* 96 NY2d 788; *see People v White*, 261 AD2d 653, 657, *lv denied* 93 NY2d 1029). In completing that review, we have " 'weigh[ed] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, *supra* at 495, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62), and have accorded deference to the jury's credibility assessments (*see People v Taylor*, *supra* at 936). We conclude that the verdict was not against the weight of the evidence (*see* CPL 470.15 [5]).

We do, however, agree with defendant that he was improperly sentenced as a second felony offender based upon his Rhode Island forgery and counterfeiting conviction (*see* RI Gen Laws § 11-17-1). Although defendant initially expressed the desire to controvert the allegations in the predicate felony statement, at the adjourned sentencing date he admitted them (*see* CPL 400.21 [3]) and, therefore, did not preserve this issue for review (*see People v Smith*, 73 NY2d 961, 962-963; *People v Miller*, 284 AD2d 724, 725, *lvs denied* 97 NY2d 678, 685; *People v Wade*, 260 AD2d 798, 799, *lv denied* 93 NY2d 1006, *cert denied* 528 US 1028). Nevertheless, under the circumstances herein, we exercise our interest of justice jurisdiction to reach the issue (*see* CPL 470.15 [3] [c]; *People v Williams*, 289 AD2d 117, 118, *lv denied* 97 NY2d 734). For sentencing purposes, a prior out-of-state conviction is a predicate felony conviction under our law if it "carries with it a sentence of imprisonment in excess of one year and a sentence in excess of one year is also authorized for the offense in this State" (*People v Gonzalez*, 61 NY2d 586, 589; *see* Penal Law § 70.06 [1] [b] [i]). Only felony crimes in this state are punishable by a sentence of imprisonment exceeding one year (*see* Penal Law § 10.00 [5]).

We agree that many of the elements of the crime of "[f]orgery and counterfeiting in general" under Rhode Island General Laws § 11-17-1 do not differ materially from the elements of its closest New York analog, forgery in the second degree, a class D felony (*see* Penal Law § 170.10). However, the Rhode Island statute also renders criminal the acts of "procur[ing] to be falsely made, altered, forged, or counterfeited" certain specifically described instruments, as well as "procur[ing] to be uttered and published as true any such false, forged, altered, or counterfeited" instrument specifically described, "knowing it to be false, forged, altered, or counterfeited, with intent to defraud" (RI Gen Laws § 11-17-1). While the procurement, i.e., possession, of a forged instrument may be punishable in New York as a felony (*see* Penal Law §§ 170.25, 170.27), it may also be punishable as a misdemeanor (*see* Penal Law § 170.20). In any event, it is not an act criminalized under forgery in the second degree, the statute relied upon by the People at sentencing.

While New York courts are "permitted * * * to go beyond the statute and scrutinize the accusatory instrument in the foreign jurisdiction where the statute renders criminal not one act but several acts which, if committed in New York, would in some cases be felonies and in others would constitute only misdemeanors" (*People v Gonzalez, supra* at 590-591), here, there

is no record proof of the accusatory instrument underlying defendant's Rhode Island conviction and, therefore, we cannot determine whether the conduct committed in Rhode Island was the equivalent of a New York felony. Accordingly, upon this record, we find that defendant should not have been sentenced as a second felony offender. We note, however, that we do not agree with defendant that he was denied the effective assistance of counsel because of his attorney's failure to challenge the predicate offense at sentencing. That error, while significant, was isolated and did not impinge upon defendant's right to a fair trial (*see People v Henry*, 95 NY2d 563, 565-566).

We further consider defendant's claim, raised in his CPL 440.10 motion, that he was denied effective representation by virtue of his counsel's alleged conflict of interest. After trial, defendant learned that his Assistant Public Defender had been employed as an Assistant District Attorney at a time when his case was pending in that office and when prosecutors were negotiating a plea arrangement with Marshall. He alleges, in conclusory terms, that his attorney obtained knowledge of his case while working for the prosecution prior to representing him.

In our opinion, there is no actual conflict of interest nor appearance of impropriety. This is not a situation where a defendant's former Legal Aid or Public Defender attorney transfers to the District Attorney's office and remains there during the course of the prosecution. Under those circumstances, reversal of defendant's conviction would be required (*see People v Shinkle*, 51 NY2d 417, 421). "[T]he rule of *Shinkle* is that disqualification is required when there is a 'risk of prejudice attendant on the abuse of confidence'" (*People v Herr*, 86 NY2d 638, 641, quoting *People v Shinkle, supra* at 421). Here, defendant's attorney was never in a position to use privileged information acquired from the representation of defendant against him. "The danger that previously obtained confidential information will become available to the prosecution simply does not exist when a District Attorney becomes a Public Defender" (*People v Sawyer*, 83 AD2d 205, 208, *affd* 57 NY2d 12, *cert denied* 459 US 1178). Nor is there any evidence that "the claimed conflict of interest [had] a direct affect on the representation" (*People v Abar*, 290 AD2d 592, 593, *lv granted* 98 NY2d 672; *see People v Longtin*, 92 NY2d 640, 644, *cert denied* 526 US 1114). We find, therefore, that defendant's right to "the fact and appearance of unswerving and exclusive loyalty" (*People v Shinkle, supra* at 421) was not compromised (*see People v Herr, supra* at 642). Accordingly, his right to the effective assistance of counsel was not violated.

Since this matter is being remitted for resentencing, we need not address defendant's remaining contention relating to the severity of the sentence.

Mercure, Spain, Lahtinen and Kane, JJ., concur. Ordered that the judgment is modified, as a matter of discretion in the interest of justice, by vacating the sentence imposed; matter remitted to the County Court of St. Lawrence County for resentencing; and, as so modified, affirmed. Ordered that the order is affirmed.