■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BARRY JACKSON, Appellant. [757 NYS2d 114] —Cardona, P.J. Appeal from a judgment of the County Court of Ulster County (Bruhn, J.), rendered December 28, 1999, upon a verdict convicting defendant of the crime of criminal possession of a weapon in the third degree.

During the early morning hours of October 11, 1998, Town of New Paltz Police Officer Robert Lucchesi was outside a bar in the Town of New Paltz, Ulster County, talking to a bouncer, Todd Kruger, and other staff. A staff member called out to Kruger indicating that there was an altercation inside resulting in Kruger going in and, after calling for assistance, Lucchesi followed. As Lucchesi entered the foyer, he observed defendant being restrained by two bouncers. Lucchesi took defendant outside where he dropped to his knees and asked for his car keys, knit hat and glasses. The items were retrieved by a bouncer and returned to defendant by Lucchesi.

Ralph Paulin stood next to defendant while he was still in a crouched position. Distracted by an altercation developing on the street, Lucchesi turned his back on defendant. At that point, Kruger called out to Lucchesi, "Rob, he just gave him a gun, he gave him a weapon." Lucchesi turned back to see that Kruger was pointing towards Paulin who was walking away. Lucchesi observed Paulin place a knit hat inside his coat and, at that point, instructed New Paltz Police Officer Gary Thomson to stop Paulin since he might have a weapon. Thomson complied and took Paulin aside, where he ordered him to place his hands on a wall to be searched. Lucchesi unholstered his weapon and "drew down" on Paulin. Suddenly, there was a gunshot which caused Thomson to jump back. He then observed a knit hat and a small revolver on the ground next to Paulin's foot. Lucchesi then searched defendant and found only his keys and glasses. Trial testimony established that the loaded revolver discharged a single shot upon striking the ground and there were no fingerprints on the gun or

ammunition. Defendant and Paulin were arrested. Subsequently, defendant was indicted for criminal possession of a weapon in the third degree and, following a jury trial, was convicted and sentenced, as a second felony offender, to a determinate term of seven years in prison.

On appeal, defendant argues that the evidence was legally insufficient to sustain his conviction and the verdict was against the weight of the evidence. In examining the trial evidence for legal sufficiency, we are required to determine whether, viewed in the light most favorable to the People, it establishes a valid line of reasoning and permissible inferences from which a rational jury could find defendant guilty of criminal possession of a weapon in the third degree beyond a reasonable doubt (*see People v Bleakley*, 69 NY2d 490, 495; *People v Bates*, 299 AD2d 727). In conducting a weight of the evidence review, we must first examine all of the credible evidence to determine if a different finding would be reasonable. If such a finding is made, we next " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' * * * . If it appears that the trier of fact has failed to give the evidence the weight it should be accorded, then [we] may set aside the verdict" (*People v Bleakley, supra* at 495, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62; *see* CPL 470.20 [2]). Furthermore, under either analysis, we do not distinguish between direct or circumstantial evidence (*see People v Rossey*, 89 NY2d 970, 971-972; *People v Cabey*, 85 NY2d 417, 421; *People v Bush*, 266 AD2d 642, 643, *lv denied* 94 NY2d 917; *People v Davis*, 260 AD2d 726, 729, *lv denied* 93 NY2d 968).

To sustain the conviction for criminal possession of a weapon in the third degree, the People were required to prove that defendant possessed a loaded firearm (*see* Penal Law § 265.02 [4]). Unrefuted evidence established that the gun was operable and loaded with live rounds of ammunition when it was discovered. Notably, however, no one witnessed defendant in actual possession of the gun and, therefore, the People relied upon circumstantial evidence to establish that element of the crime. Based upon the foregoing proof and that which follows, we find the trial evidence legally sufficient.

Notably, Eric Kretschmer, an employee at the bar, testified that he observed defendant's knit cap fall off inside the bar's foyer as he struggled with two bouncers who were moving him toward the front door. Kretschmer retrieved the hat and gave it to Lucchesi. During cross-examination, Kruger indicated that he saw defendant in a crouched position reach for his

right leg, put a shiny object into the knit hat and pass the hat to Paulin. Suzanne Sagar, a bartender, remembered seeing an individual ejected from the bar on October 11, 1998. Although she could not identify him in court, she related that she saw the individual holding a folded hat and observed him pass it to another person. Significantly, when searched immediately after the gunshot, defendant was not in possession of his knit hat.

Viewed in the light most favorable to the prosecution, we find the trial evidence provided a valid line of reasoning and permissible inferences to allow a rational trier of facts to conclude, beyond a reasonable doubt, that defendant possessed the loaded gun, placed it inside the knit hat and passed both to Paulin. Furthermore, after determining that a different finding would have been reasonable, we have weighed the relative probative force of conflicting testimony and the relative strength of conflicting inferences and conclude that the jury accorded the evidence the proper weight in rendering its verdict.

Turning to defendant's contention that County Court's *Sandoval* ruling was improper, we find no abuse of discretion. The People sought to introduce seven of defendant's prior convictions dating back to 1983. Defendant argues that it was unfair to permit questioning about those crimes because they were remote in time. County Court allowed the prosecution to inquire into a 1985 conviction for burglary in the third degree, a 1989 misdemeanor conviction for criminal possession of a weapon in the fourth degree and a 1994 conviction for manslaughter in the second degree. However, in reference to the latter two, it employed a *Sandoval* compromise, limiting the prosecution's inquiry to whether defendant had been convicted of a felony or misdemeanor and only permitted the prosecution to inquire into the underlying facts of the 1985 burglary conviction. There is no per se rule precluding the use of a prior conviction because of its age (*see People v Gray*, 84 NY2d 709; *People v Walker*, 83 NY2d 455). In our view, County Court's ruling properly balanced the probative value of his prior convictions against the potential for undue prejudice, particularly, in its use of the *Sandoval* compromise.

Finally, considering defendant's lengthy criminal history, we cannot say that the sentence imposed was harsh or excessive, nor do we discern any extraordinary circumstances warranting modification in the interest of justice (*see* CPL 470.15 [3] [c]; [6] [b]).

We have considered defendant's remaining contentions and find that they lack merit.

Crew III, Spain, Carpinello and Rose, JJ., concur. Ordered that the judgment is affirmed.