# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**488**

**KA 09-01288**

PRESENT: SCUDDER, P.J., FAHEY, CARNI, SCONIERS, AND MARTOCHE, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                              MEMORANDUM AND ORDER

JAMIE PEREZ, DEFENDANT-APPELLANT.

---

LIPSITZ GREEN SCIME CAMBRIA, LLP, BUFFALO (TIMOTHY P. MURPHY OF COUNSEL), FOR DEFENDANT-APPELLANT.

DONALD G. O'GEEN, DISTRICT ATTORNEY, WARSAW (MARSHALL A. KELLY OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Wyoming County Court (Mark H. Dadd, J.), rendered June 4, 2009. The judgment convicted defendant, upon his plea of guilty, of promoting prison contraband in the first degree.

It is hereby ORDERED that the judgment so appealed from is affirmed.

Memorandum: On appeal from a judgment convicting him upon his plea of guilty of promoting prison contraband in the first degree (Penal Law § 205.25 [2]), defendant contends that he was denied due process based on the delay of 11½ months between the date of the incident and the date of the indictment. Applying the factors set forth in *People v Taranovich* (37 NY2d 442, 445), we reject that contention (*see People v Vernace*, 96 NY2d 886, 887-888). "There is no specific temporal period by which a delay may be evaluated or considered 'presumptively prejudicial' " (*People v Romeo*, 12 NY3d 51, 56, *cert denied* 130 S Ct 63), but a delay of 11½ months alone is insufficient to require dismissal of the indictment (*see People v Beyah*, 302 AD2d 981, *lv denied* 99 NY2d 626; *People v Irvis*, 301 AD2d 782, 784, *lv denied* 99 NY2d 655). The People explained that the delay was caused by staffing problems in the District Attorney's Office, and defendant does not contend that the delay was caused by any bad faith on the part of the People (*see Romeo*, 12 NY3d at 56-57). "The charge against defendant was serious, 'involv[ing] the safety and security of a correctional facility . . .' . . . Moreover, because defendant was already incarcerated on a prior felony conviction, 'the delay caused no further curtailment of his freedom' . . . Finally, we are unable to conclude on the record before us that the defense has been impaired by reason of the delay" (*People v Jenkins*, 2 AD3d 1390, 1391; *see People v Coggins*, 308 AD2d 635, 636; *People v Richardson*, 298 AD2d 711, 712).

Defendant further contends that County Court erred in refusing to suppress the statement that he made to the correction officer before that officer conducted a pat frisk. We reject that contention. At the *Huntley* hearing, the correction officer testified that, after a disturbance in the prison yard, he escorted defendant from the yard. Once inside the corridor of the prison, the correction officer asked defendant to face the wall "in the pat frisk position." Before frisking defendant, the correction officer asked him "if he had anything on him." Defendant answered affirmatively, and it is that answer that defendant contends should have been suppressed.

The Court of Appeals has clearly stated that "[w]hen . . . the circumstances of the detention and interrogation of a prison inmate are no longer analogous to those kinds of detentions found not custodial in nonprison settings[] but instead entail added constraint that would lead a prison inmate reasonably to believe that there has been a restriction on that person's freedom over and above that of ordinary confinement in a correctional facility, *Miranda* warnings are necessary" (*People v Alls*, 83 NY2d 94, 100, *cert denied* 511 US 1090). Although the correction officer admitted at the hearing that defendant was restrained to a greater degree than other inmates, that statement does not establish that defendant was restrained in a manner over and above that of ordinary confinement in a correctional facility.

Here, at the time defendant made his incriminating statement, the detention was the equivalent of a frisk for weapons. "There is a clear distinction between a stop and frisk inquiry and a forcible seizure [that] curtails a person's freedom of action to the degree associated with a formal arrest" (*People v Morales*, 65 NY2d 997, 998). "When a seizure of a person remains at the stop and frisk inquiry level and does not constitute a restraint on his or her freedom of movement of the degree associated with a formal arrest, *Miranda* warnings need not be given prior to questioning" (*People v Bennett*, 70 NY2d 891, 894; *see Morales*, 65 NY2d at 998). Although the Court of Appeals' decisions in *Bennett* and *Morales* concern situations in nonprison settings, we conclude that the underlying premise is the same for prison settings. A stop and frisk would not constitute custody pursuant to the *Miranda* rule in the nonprison setting, and we see no need to afford prison inmates any greater protection in a prison setting. Thus, "[t]he brief investigatory detention of defendant did not 'entail added constraint that would lead a prison inmate reasonably to believe that there has been a restriction on that person's freedom over and above that of ordinary confinement in a correctional facility' . . ., and the correction [officer's] single question to defendant did not constitute custodial interrogation" (*People v Douglas*, 12 AD3d 1174, quoting *Alls*, 83 NY2d at 100).

In the cases relied upon by the dissent, the seizures of the defendants were commensurate with a formal arrest, and the questioning went beyond routine questioning (*see People v Gause*, 50 AD3d 1392, 1393-1394; *People v Brown*, 49 AD3d 1345, 1346; *People v Hope*, 284 AD2d 560, 561-562).

In any event, we further conclude that the court properly refused

to suppress the statement in question based on the public safety exception to the *Miranda* rule (*see generally New York v Quarles*, 467 US 649, 655-657).  The correction officer testified at the hearing that it was his practice to ask inmates whether they "had anything on" them before any pat frisk so that he would not "get stuck or cut." Although the correction officer admitted that he asked the question in part to obtain information about a possible violation of inmate rules, the question was " 'reasonably prompted by a concern to secure the safety of the investigating officer[] . . . and was not *solely* motivated for the purpose of eliciting testimonial evidence' " (*People v Taylor*, 302 AD2d 868, 868-869, *lv denied* 99 NY2d 658 [emphasis added]).

We reject defendant's contention that he was improperly sentenced as a second felony offender.  Contrary to defendant's contention, the felony conviction for which he was incarcerated at the time of the incident at issue qualified as the requisite predicate felony conviction for second felony offender status (*cf. People v Samms*, 95 NY2d 52, 55; *see generally People v Ross*, 7 NY3d 905, 906).  Defendant was not denied effective assistance of counsel based on defense counsel's failure to move to vacate the second felony offender adjudication on that ground (*see People v Bell*, 259 AD2d 429, *lv denied* 93 NY2d 922).  "Defendant failed to preserve for our review his further contention concerning the failure to comply with the procedural requirements of CPL 400.21 . . . [and, i]n any event, [he] waived strict compliance with [that statute] by admitting the prior felony conviction in open court" (*People v Vega*, 49 AD3d 1185, 1186, *lv denied* 10 NY3d 965).  The sentence is not unduly harsh or severe. We have reviewed defendant's remaining contention and conclude that it lacks merit.

All concur except CARNI, J., who dissents and votes to reverse in accordance with the following Memorandum:  I respectfully dissent inasmuch as I disagree with the conclusion of my colleagues that defendant was not subject to custodial interrogation when he was questioned by a correction officer just prior to the discovery of a weapon in the waistband of defendant's pants.

I agree with defendant that reversal is required based on County Court's refusal to suppress the statement allegedly made by defendant to that correction officer.  At the *Huntley* hearing, the correction officer testified that there was a disturbance in the prison yard and that he was instructed to escort defendant out of the yard and into a corridor because another officer had witnessed defendant place something in his pants.  In the corridor, with several other correction officers present, the officer who had escorted defendant out of the yard instructed him to face the wall and asked defendant "if he had anything on him."  Defendant responded that he had a weapon, and a pat frisk revealed "a pick[-]type weapon" in defendant's waistband.  The correction officer further testified that defendant was not free to leave once he was escorted out of the yard and that he was subjected to greater restraint than that to which other inmates were subjected.  I conclude that, "under those circumstances, 'defendant could have reasonably believed that his freedom was

restricted over and above that of ordinary confinement' " (*People v Brown*, 49 AD3d 1345, 1346; *see People v Alls*, 83 NY2d 94, 100, *cert denied* 511 US 1090; *People v Hope*, 284 AD2d 560, 562), and thus the correction officer should have administered *Miranda* warnings (*see Alls*, 83 NY2d at 100).

I also respectfully disagree with the majority's determination to extend the public safety exception to the prison context under the facts presented here (*see People v Gause*, 50 AD3d 1392, 1394).  The altercation that gave rise to the isolated custodial detention of defendant had fully dissipated when multiple correction officers surrounded defendant and he was escorted by a correction officer into a corridor in order to be pat frisked.  The correction officer admitted that his question to defendant included an attempt to obtain information about a possible violation of inmate rules.  "[I]t was likely that the inquiry would elicit evidence of a crime and, indeed, it did elicit an incriminating response" (*Brown*, 49 AD3d at 1346).  Thus, I conclude that the public safety exception is inapplicable here (*see Gause*, 50 AD3d at 1394).

Inasmuch as I "cannot say with certainty that the erroneous suppression ruling played no part in defendant's decision to plead guilty," I conclude that the plea must be vacated (*People v Self*, 213 AD2d 998, 998; *see People v Coles*, 62 NY2d 908, 909-910).  I would therefore vacate the plea, grant that part of the omnibus motion seeking to suppress defendant's statement to the correction officer and remit the matter to County Court for further proceedings on the indictment.

Entered: June 10, 2011                          Patricia L. Morgan
                                                Clerk of the Court