OPINION OF THE COURT
Egan Jr., J.
On September 9, 2009, a correction officer at Woodbourne Correctional Facility in Sullivan County, where defendant then was incarcerated, was making his daily rounds when he observed a green towel covering the window of defendant’s cell. As the correction officer paused to investigate, he overheard de *25 fendant — the sole occupant of the cell — engaging in what he characterized as a one-sided, business-like conversation. After verifying that the surrounding cells were empty, the correction officer notified a sergeant who, in turn, ordered that defendant be removed from his cell and that a search thereof be conducted.
While defendant’s cell was being searched, the correction officer and the sergeant escorted defendant to the facility’s recreation room and told him to sit down on a chair. Defendant indicated that he preferred to stand and, when the sergeant insisted that he sit, defendant complied by sitting on the edge of the chair in what was described as a “loung[ing] position.” After being advised that the search of defendant’s cell uncovered a cell phone charger on his bed, together with a password and a collection of phone numbers stuffed in the toe of a shoe, the sergeant ordered a strip frisk of defendant. As defendant was being escorted from the recreation room for the strip frisk, the sergeant observed that defendant walked with “an unusual gait.” When defendant thereafter was asked to remove his underwear, he initially hesitated but ultimately pulled out a cell phone that had been hidden in his buttocks.[1] According to an investigator with the Office of the Inspector General for the Department of Corrections and Community Supervision (hereinafter DOCCS), defendant subsequently admitted that he purchased the cell phone for $500 in order to speak with his wife — with whom he purportedly was experiencing marital problems.
As a result of this incident, defendant was indicted and charged with one count of promoting prison contraband in the first degree. Following a jury trial, defendant was convicted as charged and — after multiple adjournments — was sentenced as a second felony offender to a prison term of 3 to 6 years, to be served consecutively to the sentence he then was serving. Defendant now appeals.
Defendant primarily contends that there is legally insufficient evidence to support his conviction of promoting prison contraband in the first degree — specifically, that the People failed to establish that the cell phone in question constituted dangerous contraband.[2] Insofar as is relevant here, “[a] person is guilty of promoting prison contraband in the first degree when . . . [b]e *26 ing a person confined in a detention facility, he [or she] knowingly and unlawfully . . . obtains or possesses any dangerous contraband” (Penal Law § 205.25 [2]). “Dangerous contraband,” in turn, is defined as “contraband which is capable of such use as may endanger the safety or security of a detention facility or any person therein” (Penal Law § 205.00 [4]). There is no dispute that defendant was confined to a detention facility in September 2009, and he conceded both that he possessed a cell phone on the day in question and that no one — inmates, visitors, lawyers or even facility personnel — is allowed to bring a cell phone into a correctional facility. As various correction officials confirmed that cell phones were not permitted within the facility and, more to the point, that defendant was not authorized to possess such a device, there is no question that defendant possessed “contraband” within the meaning of Penal Law § 205.00 (3).[3] Hence, the narrow question presented for our consideration is whether there is legally sufficient evidence to support the jury’s finding that defendant possessed dangerous contraband within the meaning of Penal Law §§ 205.00 (4) and 205.25 (2).[4]
In this regard, the Court of Appeals has instructed that
“the test for determining whether an item is dangerous contraband is whether its particular characteristics are such that there is a substantial probability that the item will be used in a manner that is likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats to a detention facility’s institutional safety or security” (People v Finley, 10 NY3d 647, 657 [2008]; accord People v Ariosa, 100 AD3d 1264, 1265 [2012], lv denied 21 NY3d 1013 [2013]; People v Cooper, 67 AD3d 1254, 1256 [2009], lv denied 14 NY3d 799 [2010]).
*27 Notably, “the distinction between contraband and dangerous contraband” does not turn upon “whether an item is legal or illegal outside of prison . . . [as] [i]t is obvious that an item, such as a razor, may be perfectly legal outside prison and yet constitute dangerous contraband when introduced into that unpredictable environment” (People v Finley, 10 NY3d at 658 n 8). Similarly, as our case law makes clear, the item in question need not be inherently dangerous in order to qualify as dangerous contraband. Indeed, although weapons are perhaps the most commonly recognized source of dangerous contraband in a prison setting (see People v Aponte, 60 AD3d 1199, 1200 [2009]; People v Sidney, 53 AD3d 790, 790-791 [2008]; People v Torres, 14 AD3d 801, 803 [2005], lv denied 4 NY3d 836 [2005]; see also People v Sharpe, 295 AD2d 957, 957-958 [2002]), courts have— applying the Finley test — reached the very same conclusion with respect to other items made, obtained or possessed by prison inmates, including illegal quantities of drugs (see People v Ariosa, 100 AD3d at 1265-1266; People v Cooper, 67 AD3d at 1256-1257), a disposable BIC lighter (see People v Cash, 95 AD3d 1374, 1375-1376 [2012], lv denied 19 NY3d 958 [2012]) and hand-drawn maps or knotted links of wire that could be used to facilitate an escape (see People v Wilson, 56 AD3d 1266, 1266-1267 [2008], lv denied 12 NY3d 763 [2009]; see also People v Jones, 134 AD2d 701, 701-703 [1987], lv denied 71 NY2d 969 [1988]). Although the majority in Finley did not expressly address this issue, Judge Pigott opined in his concurrence/dissent that “[i]f the contraband at issue is not inherently dangerous . . . , the People must present specific, competent proof from which the trier of fact may infer that use of the contraband could potentially create a dangerous situation inside the facility” (People v Finley, 10 NY3d at 660 [Pigott, J., concurring in part and dissenting in part]).[5] As a cell phone admittedly is not an inherently dangerous item, the question is whether the People adduced sufficient proof to establish the cell phone’s potential to be used in such a pernicious manner as to elevate it to the level of dangerous contraband.
*28 Here, the supervising superintendent for the seven correctional facilities (including Woodbourne) comprising the “Sullivan Hub” — a DOCCS’ employee with 33 years of experience working inside of prisons — testified as to the procedures governing the inmate “call home program.” Specifically, the superintendent testified that each inmate is allowed to list up to 15 individuals to whom he or she may make phone calls during certain designated hours; additional restrictions are imposed with respect to who may be included on each inmate’s phone list, and inmates are not permitted to place calls to wireless customers. As a security measure, inmate phone calls are recorded and/or monitored, and the superintendent testified that phone privileges are an incentive designed to aid in maintaining good order within each secure detention facility.[6] For these reasons, the superintendent testified, no one — including a correction officer — is permitted to bring a cell phone into a state correctional facility, as “[t]he primary concern is that [it] would get into the hands of an inmate.”
As to the specific threats posed by the introduction of a cell phone into a prison environment, the superintendent testified that an inmate in possession of a cell phone has the ability “to bypass some of the protections that are in place to carry out [DOCCS’] mission of public safety” — most notably, the procedures governing the recording and monitoring of inmate phone calls — thereby posing “a significant security risk” to the facility.[7] In this regard, the superintendent acknowledged that “criminal activity is carried on from . . . [inside correctional] institution[s] even on phones that are monitored,” and further testified that an Inmate’s ability to bypass established security procedures and systems by using a cell phone only enhances the potential for an inmate to develop and/or execute “an escape plan,” orchestrate an “injury” to someone inside or outside of the facility and “carry[ ] on criminal activity from inside the [correctional] institution.” The potential for such endeavors, in turn, presents “a significant risk, . . . either to the public or to the [particular] institution,” and it is for this reason that a cell *29 phone — an item that, the superintendent testified, is “deemed in demand” by inmates — is viewed as “a significant item of contraband” within a prison setting.
Based upon our review of the record as whole — particularly the detailed and specific testimony offered by the supervising superintendent — we are satisfied that the People met their burden of establishing that the cell phone seized from defendant constituted dangerous contraband under the test set forth in Finley. Indeed, this matter is analogous to the Fourth Department’s decision in People v Wilson {supra), wherein the dangerous contraband consisted of a drawing of the recreation yard and a portion of the jail in question. Applying the Finley analysis, the Fourth Department concluded that “[i]terns that facilitate an escape are properly considered dangerous contraband because they endanger the safety or security of a facility” (People v Wilson, 56 AD3d at 1267). That same conclusion is compelled by the proof adduced here. To be sure, neither the piece of paper at issue in Wilson nor the cell phone at issue here is inherently — or even obviously — dangerous in and of itself, but Finley imposes no such requirement. Rather, all that is required under Finley is that an item’s “particular characteristics are such that there is a substantial probability that the item will be used in a manner that is likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats to a detention facility’s institutional safety or security” (People v Finley, 10 NY3d at 657). As the record before us contains specific, competent proof from which the jury reasonably could draw such inferences and conclude that defendant’s use of a cell phone would likely create a dangerous situation inside the correctional facility where he was incarcerated, we discern no basis upon which to disturb the conviction.[8]
The remaining arguments raised by defendant are equally unavailing. To the extent that defendant contends that he was denied his statutory right to appear and testify before the grand *30 jury (see CPL 190.50 [5] [a]), we need note only that defendant failed to move to dismiss the indictment upon this ground within five days of his arraignment thereon (see CPL 190.50 [5] [c]), thereby waiving any objection in this regard (see People v Caban, 89 AD3d 1321, 1322 [2011]; People v Rolle, 72 AD3d 1393, 1395 [2010], lv denied 16 NY3d 745 [2011]). In any event, defendant also failed to establish that the letter he allegedly sent advising of his desire to testify was actually received by the District Attorney (see People v Caban, 89 AD3d at 1322; People v Torres, 14 AD3d 801, 802 [2005], lv denied 4 NY3d 836 [2005]).
Defendant’s assertions that County Court improperly instructed the jury as to the definition of dangerous contraband in the first instance and thereafter failed to meaningfully respond to the jury’s requests for further instruction also are unpreserved for our review, as the record reveals that defendant raised no objections thereto (see CPL 470.05 [2]; People v Fauntleroy, 108 AD3d 885, 887 [2013], lv denied 21 NY3d 1073 [2013]; see also People v Reichel, 110 AD3d 1356, 1364-1365 [2013], lv denied 22 NY3d 1090 [2014]). Further, inasmuch as County Court — in large measure — followed the Model Jury Charge for promoting prison contraband in the first degree (see CJI2d[NY] Penal Law § 205.25 [2]) and subsequently provided clarification that was neither inconsistent nor confusing, we discern no need to take corrective action in the interest of justice.
We reach a similar conclusion with respect to defendant’s claim of prosecutorial misconduct. The statements to which defendant now objects are largely unpreserved for our review (see People v Hughes, 111 AD3d 1170, 1173 [2013]), and the record as a whole fails to disclose “that the prosecutor engaged in a flagrant and pervasive pattern of prosecutorial misconduct so as to deprive [defendant] of a fair trial” (People v Mitchell, 112 AD3d 1071, 1074 [2013], lv denied 22 NY3d 1140 [2014] [internal quotation marks and citation omitted]; see People v Perry, 95 AD3d 1444, 1446 [2012], lv denied 19 NY3d 1000 [2012]). Defendant’s related claim — that he was deprived of a fair trial due to the People’s failure to provide him with notice of their intent to offer a certain statement made by him after he was removed from his cell but prior to the strip frisk (see CPL 710.30) — does not warrant reversal. Even assuming, without *31 deciding, that removing defendant from his cell and escorting him to the facility’s recreation room pending the cell search[9] entailed an “added [level of] constraint” that, in turn, would lead defendant to reasonably believe “that there [had] been a restriction on [his] freedom over and above that of ordinary confinement in a correctional facility” (People v Alls, 83 NY2d 94, 100 [1993], cert denied 511 US 1090 [1994]), thereby triggering the need for Miranda warnings (compare People v Gause, 50 AD3d 1392, 1393 [2008], People v Brown, 49 AD3d 1345, 1346 [2008], and People v Hope, 284 AD2d 560, 561-562 [2001], with People v Perez, 85 AD3d 1538, 1539-1540 [2011]), we deem any error in this regard to be harmless beyond a reasonable doubt given the overwhelming evidence of defendant’s guilt (see People v Gause, 50 AD3d at 1394).
Finally, we find no merit to defendant’s ineffective assistance of counsel claim. To the extent that defendant asserts in his pro se brief that counsel failed to properly investigate his case and/or bring certain motions upon his behalf, such claims implicate matters outside of the record and, as such, are more properly addressed in a CPL article 440 motion (see People v Cade, 110 AD3d 1238, 1241 [2013], lv denied 22 NY3d 1155 [2014]; People v Terpening, 79 AD3d 1367, 1368 [2010], lv denied 16 NY3d 837 [2011]). As to the balance of defendant’s claim, counsel filed an omnibus motion, presented a cogent trial strategy, effectively cross-examined the People’s witnesses, made relevant objections and articulated coherent opening and closing statements. Accordingly, we are satisfied that defendant was afforded meaningful representation (see People v Jabaut, 111 AD3d 1140, 1146 [2013], lv denied 22 NY3d 1139 [2014]; People v Fulwood, 86 AD3d 809, 811 [2011], lv denied 17 NY3d 952 [2011]). Defendant’s remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
*32 Stein, J.E, McCarthy and Rose, JJ., concur.
Ordered that the judgment is affirmed.

. The password discovered in defendant’s cell unlocked this phone.

. Although there appears to be a gap in the trial transcript, the People do not dispute that defendant moved for a trial order of dismissal upon this ground — both at the close of the People’s case and again at the close of all *26 proof — thereby preserving this issue for our review (see People v Johnson, 106 AD3d 1272, 1278 n 9 [2013], lv denied 21 NY3d 1043 [2013]).

. “Contraband” is defined as “any article or thing which a person confined in a detention facility is prohibited from obtaining or possessing by statute, rule, regulation or order” (Penal Law § 205.00 [3])' — the introduction, procurement, possession or manufacture of which constitutes promoting prison contraband in the second degree (see Penal Law § 205.20).

. We previously have upheld guilty pleas in this regard where the contraband in question was a cell phone and the element of dangerousness was not contested (see People v Brown, 75 AD3d 655, 656 [2010]; People v Sylvester, 40 AD3d 1261, 1262 [2007], lv denied 9 NY3d 926 [2007]; compare People v Pagan, 36 AD3d 1163, 1164-1165 [2007]).

. Indeed, in evaluating the legal sufficiency of a conviction of promoting prison contraband in the first degree that was based upon an inmate obtaining or possessing a quantity of drugs, this Court has adopted this analysis and has looked to whether such possession was accompanied by proof regarding the circumstances under which the drugs were imported, the inmate’s apparent intent to distribute and the specific threat posed thereby (see People v Ariosa, 100 AD3d at 1265-1266; People v Cooper, 67 AD3d at 1256-1257; People v Machuca, 45 AD3d 1043, 1044 [2007], lv denied 10 NY3d 813 [2008]).

. In response to a question posed by the People, the superintendent agreed that “if an inmate was not concerned about having [his or her] phone privileges taken away because [he or she] had a cell phone[,] that could lead to a situation where [the inmate] readily violate[s] the rules of the facility . . . [thereby] affect[ing] the safety and security of those people inside the facility.”

. Indeed, the investigator who interviewed defendant after the discovery of the cell phone testified that defendant admitted that he purchased the cell phone because “he didn’t want the facility to monitor his calls.”

. We note in passing that some states have elected — either by statute or regulation — to expressly classify cell phones as dangerous contraband (see e.g. Tex Penal Code Ann § 38.11 [a] [3]; Cal Code Regs, tit 15, § 3006 [a]; see also 28 CFR 541.3 [a] [classifying the possession of a “portable telephone, pager, or other electronic device” as a prohibited act of the “greatest severity”]; Thomas v Owens, 2012 WL 591791, 2012 US Dist LEXIS 22946 [D SC, Feb. 23, 2012, No. 9:ll-CV-00443-RBH]; Pilkington v Kentucky Dept. of Corrections, 2009 WL 1098458, 2009 Ky App Unpub LEXIS 34 [Apr. 24, 2009, No. 2008-CA-001657-MR]).

. As noted previously, after defendant was removed from his cell, the sergeant and another correction officer escorted defendant to the facility’s recreation room, where he remained during the search of his cell. While awaiting the results of that search, the sergeant asked defendant if he had any contraband on him, which defendant denied. After the sergeant was informed of the discovery of the cell phone charger and password, she ordered that defendant be strip frisked. Defendant’s denial that he possessed contraband— made prior to the discovery of the items in his cell and the issuance of the strip frisk directive — was not addressed at the Huntley hearing conducted in this matter, and it does not appear that the People filed a CPL 710.30 notice with respect thereto.