# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

50

**KA 14-00852**

PRESENT: SMITH, J.P., CARNI, LINDLEY, AND DEJOSEPH, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                                     MEMORANDUM AND ORDER

JOSEPH A. STEFANOVICH, DEFENDANT-APPELLANT.

---

BRUCE R. BRYAN, SYRACUSE, FOR DEFENDANT-APPELLANT.

GREGORY S. OAKES, DISTRICT ATTORNEY, OSWEGO (AMY L. HALLENBECK OF COUNSEL), FOR RESPONDENT.

-----------------------------------------------------------------------------------

Appeal from a judgment of the Oswego County Court (James M. Metcalf, A.J.), rendered February 21, 2014.  The judgment convicted defendant, upon a jury verdict, of rape in the first degree.

It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law and a new trial is granted.

Memorandum:  On appeal from a judgment convicting him following a jury trial of rape in the first degree (Penal Law § 130.35 [1]), defendant contends that he was deprived of effective assistance of counsel at trial.  According to defendant, his attorney was ineffective because he allowed the jury to learn that he was a registered sex offender who had previously been convicted of a felony sexual offense.  We agree with that contention and grant defendant a new trial.

On the evening of July 30, 2005, the victim reported to the police in the Village of Phoenix that a young man whom she did not know dragged her into the woods and raped her.  She had injuries consistent with a violent assault, and semen from the victim's vagina was recovered at the hospital by use of a rape kit.  In 2010, approximately five years after the attack, the police learned that the DNA from the semen matched defendant's DNA profile, which was in the Combined DNA Index System (CODIS) because he was a convicted felon.  When a police investigator interviewed defendant two years later, in December 2012, defendant said that he did not know or recognize the victim and never had sexual intercourse with her.  Defendant agreed to give an oral swab, providing the police with his DNA, and subsequent testing conclusively established that defendant's DNA matched that from the semen preserved in the rape kit.  Defendant was arrested on January 31, 2013 and charged with rape in the first degree.

At the outset of the jury trial, and before commencement of voir

dire, defense counsel informed County Court that defendant would be testifying at trial. During the ensuing *Sandoval* hearing, the prosecutor stated that he wished to cross-examine defendant with respect to three criminal convictions: a 2008 misdemeanor conviction, for driving while intoxicated, a 2005 felony conviction, for sexual abuse in the first degree, and a 1994 felony conviction, for driving while intoxicated. With respect to the sexual abuse conviction, the prosecutor, acknowledging that "the nature of that offense" is "so similar to the present charge," requested a *Sandoval* compromise pursuant to which he would be allowed to ask defendant "if he was convicted of a felony offense but not specify the title of that offense or the underlying facts." The court agreed to that request, noting that the probative value of allowing the jury to know of defendant's prior sex offense "would not outweigh [its] prejudicial effect." With respect to the driving while intoxicated convictions, the court ruled that defendant could be impeached with the misdemeanor but not the felony, which the court deemed too remote.

The prosecutor then advised the court of a potential problem arising from the audio recording of the police investigator's interview with defendant, i.e., that during the interview repeated mention was made of defendant's status as a registered sex offender. Although the references to defendant being a sex offender could easily have been edited out of the recording, defense counsel stated that he did not object to the recording being played in its entirety for the jury inasmuch as the People would "probably introduce" documents pertaining to the testing of defendant's DNA that refer to his status as a sex offender. Defense counsel evidently concluded that the jury would learn that defendant was a registered sex offender even if an edited recording were played to the jury.

During voir dire, defense counsel twice informed the prospective jurors that defendant had previously committed a sexual offense, asking whether that would affect anyone's ability to be impartial. One prospective juror answered "Yeah," explaining that, given defendant's prior sexual conviction, he probably could not entertain the concept of defendant being not guilty of the sexual crime charged in this case. Defense counsel revealed his trial strategy during his opening statement, which was to argue that the police locked in on defendant as a suspect merely because he is a registered sex offender. "Ladies and gentlemen," defense counsel added, "my client, even though he is a registered sex offender, is presumed innocent."

At trial, the investigator who interviewed defendant testified for the People, and the recording of that interview was played for the jury, including the parts that refer to defendant being a registered sex offender. The investigator testified that he developed defendant as a suspect because defendant's DNA profile in CODIS matched the DNA profile of the rapist. During cross-examination of the investigator, defense counsel made reference once again to defendant being a registered sex offender. Defendant later took the stand in his own defense, acknowledging on direct examination that he pleaded guilty to a felony sexual offense in 2005, which required him to register as a sex offender. Defendant then testified that he met the victim on the

day in question and had consensual sexual intercourse with her in the woods.

During his summation, defense counsel conceded that the victim had been raped in the woods, but maintained that defendant merely had consensual intercourse with her earlier that same day in those same woods.  Defense counsel then made one last reference to defendant's status as a registered sex offender:  "The state thought that this was going to be easy.  My client is a registered sex offender.  He's not here - - he's not here to be judged on his morality."  The jury returned a guilty verdict.

It is well settled that "mere disagreement with trial strategy is insufficient to establish that defense counsel was ineffective" (*People v Henry*, 74 AD3d 1860, 1862, *lv denied* 15 NY3d 852).  At the same time, however, an attorney should not be deemed effective simply because he or she followed a strategy.  Rather, there must be some examination of the reasonableness of the strategy.  The Court of Appeals made that point clear when it wrote:  "As long as the defense reflects a *reasonable and legitimate strategy* under the circumstances and evidence presented, even if unsuccessful, it will not fall to the level of ineffective assistance . . . a claim of ineffective assistance of counsel will be sustained only when it is shown that counsel partook '*an inexplicably prejudicial course*' " (*People v Benevento*, 91 NY2d 708, 712-713, quoting *People v Zaborski*, 59 NY2d 863, 865 [emphasis added]).

Here, we conclude that defense counsel's strategy, i.e., to allow the jury to know that defendant was a registered sex offender and then argue that the police focused their investigation on defendant because he was a registered sex offender, was based on an obviously false premise.  The police focused their investigation on defendant because his DNA profile matched that of the rapist, not because he was a registered sex offender.  Moreover, defendant's DNA profile was in CODIS because he was a convicted felon, not because he had committed a sexual offense.  This is not to say that defense counsel pursued an unreasonable defense *theory* at trial.  The theory was that defendant had consensual intercourse with the victim on the same day that she was raped by someone else.  In pursuing that theory, however, it was unnecessary for defense counsel to inform the jury that defendant was a registered sex offender.  In fact, any chance that the jurors would have believed defendant's testimony about the intercourse being consensual was likely extinguished once they learned that he had previously committed a sex offense.  In short, defendant derived no discernible benefit from the jury knowing that he was a registered sex offender, and was highly prejudiced thereby.

It must be emphasized that defendant received a favorable *Sandoval* ruling pursuant to which he could have testified at trial without being asked about the prior conviction of a sexual offense. The prosecutor was permitted to ask merely whether he was convicted of a felony.  Also, as previously noted, the references to defendant's status as a registered sex offender on the audio recording of the police investigator's interview with defendant could easily have been

redacted.  The relevant parts of the interview related to defendant's assertions that he did not know the victim and did not have sexual intercourse with her.  Indeed, the court was open to the idea of redacting the prejudicial portions of the recording until defense counsel stated that he did not object to the recording being played in its entirety.  Similarly, any references to defendant as a sex offender on the DNA documents could have been redacted.  In any event, no such documents were offered by the People at trial or otherwise admitted in evidence.

In sum, we conclude that defense counsel "partook 'an inexplicably prejudicial course' " of action by allowing the jury to know that defendant is a registered sex offender (*id.*).  Although the proof of guilt may have been overwhelming, defense counsel's error was so "egregious and prejudicial as to compromise . . . defendant's right to a fair trial" (*People v Caban*, 5 NY3d 143, 152; *see generally People v Crimmins*, 36 NY2d 230, 237-238).

Defendant's further contention that the evidence is legally insufficient to establish his guilt is unpreserved for our review (*see People v Hines*, 97 NY2d 56, 61, *rearg denied* 97 NY2d 678) and, in any event, it lacks merit.  Viewing the evidence in the light most favorable to the People, as we must (*see People v Contes*, 60 NY2d 620, 621), we conclude that there is a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion reached by the jury based on the evidence at trial, i.e., that defendant had sexual intercourse with the victim by forcible compulsion (*see generally People v Bleakley*, 69 NY2d 490, 495).  Viewing the evidence in light of the elements of the crime as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we further conclude that the verdict is not against the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495).  Even assuming, arguendo, that a different verdict would not have been unreasonable, we cannot conclude that the jury failed to give the evidence the weight it should be accorded (*see id*.).

We have reviewed defendant's remaining contentions, and conclude that none constitutes a further ground for reversal.

Entered:  February 11, 2016                        Frances E. Cafarell
                                                   Clerk of the Court