People v Stefanovich (2022 NY Slip Op 04241)

People v Stefanovich

2022 NY Slip Op 04241

Decided on July 1, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 1, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., NEMOYER, CURRAN, WINSLOW, AND BANNISTER, JJ.

331 KA 18-00208

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JOSEPH STEFANOVICH, DEFENDANT-APPELLANT. 

KEEM APPEALS, PLLC, SYRACUSE (BRADLEY E. KEEM OF COUNSEL), FOR DEFENDANT-APPELLANT.
GREGORY S. OAKES, DISTRICT ATTORNEY, OSWEGO (AMY L. HALLENBECK OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Oswego County (James W. McCarthy, J.), rendered January 27, 2017. The judgment convicted defendant, after a nonjury trial, of rape in the first degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant was initially convicted following a jury trial of rape in the first degree (Penal Law § 130.35 [1]). Although the victim was unable to identify defendant at trial, his DNA linked him to the crime, and he acknowledged during his testimony that he had sexual intercourse with the victim on the date in question but claimed that it was consensual. We reversed the judgment on appeal and ordered a new trial, concluding that defendant was deprived of effective assistance of counsel because his trial attorney repeatedly informed the jury, for no legitimate strategic reason, that defendant was a registered sex offender (People v Stefanovich, 136 AD3d 1375 [4th Dept 2016], lv denied 27 NY3d 1139 [2016]). We rejected defendant's contentions that the evidence was legally insufficient and that the verdict was against the evidence. Upon remittal, defendant waived his right to a jury trial and, following a nonjury trial, he was convicted of the same crime based on essentially the same evidence that was admitted at the first trial.
Defendant contends that Supreme Court erred in denying that part of his omnibus motion seeking to preclude the People from using his testimony from the first trial against him at the retrial. Because the People did not ultimately seek to admit defendant's testimony from the first trial at the retrial, defendant was not prejudiced by the court's ruling, even assuming, arguendo, that it was improper. We note that defendant took the stand and offered testimony consistent with his testimony at the first trial. Under the circumstances, there is no basis for reversal arising from the denial of defendant's preclusion motion.
Considering that the evidence at the retrial was largely the same as the evidence at the first trial, we reject defendant's contention that the evidence is legally insufficient to establish his guilt. Viewing the evidence in the light most favorable to the People, as we must (see People v Contes, 60 NY2d 620, 621 [1983]), we conclude that "there is a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion reached by the [factfinder] based on the evidence at trial, i.e., that defendant had sexual intercourse with the victim by forcible compulsion" (Stefanovich, 136 AD3d at 1379; see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
Further, viewing the evidence in light of the elements of the crime in this nonjury trial (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495). There is no dispute that, as the DNA evidence established, defendant had sexual intercourse with the victim; the only [*2]question at trial was whether it was by forcible compulsion, as the victim testified, or whether it was consensual, as defendant testified. The court evidently believed the victim and not defendant, and there is no basis in the record for us to disturb the court's credibility determinations, which are entitled to great deference (see People v Pabon, 126 AD3d 1447, 1448 [4th Dept 2015], affd 28 NY3d 147 [2016]; People v McMillian, 158 AD3d 1059, 1061 [4th Dept 2018], lv denied 31 NY3d 1119 [2018]), especially considering that defendant, when questioned by the police, denied having sex with the victim.
Defendant further contends that the court erred in refusing to dismiss the indictment on the ground that he was deprived of due process by unreasonable preindictment delay (see People v Vernace, 96 NY2d 886, 887 [2001]). In determining whether defendant was deprived of due process, we must consider the factors set forth in People v Taranovich (37 NY2d 442 [1975]), which are: "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay" (id. at 445; see People v Lewis, 199 AD3d 1441, 1441 [4th Dept 2021], lv denied — NY3d — [2022]).
"[N]o one factor [is] dispositive of a violation, and [there are] no formalistic precepts by which a deprivation of the right can be assessed" (People v Romeo, 12 NY3d 51, 55 [2009], cert denied 558 US 817 [2009]). "Generally when there has been a protracted delay, certainly over a period of years, the burden is on the prosecution to establish good cause" (People v Singer, 44 NY2d 241, 254 [1978]). We note, however, that "[t]he People necessarily have wider discretion to delay commencement of prosecution for good faith, legitimate reasons than they do to delay a defendant's trial after charges have been filed, even for legitimate reasons and without acting in bad faith" (People v Wiggins, 31 NY3d 1, 13 [2018] [additional emphasis added]), and "it is well established that the extent of the delay, standing alone, is not sufficient to warrant a reversal" (People v McFadden, 148 AD3d 1769, 1771 [4th Dept 2017], lv denied 29 NY3d 1093 [2017]; see People v Decker, 13 NY3d 12, 15 [2009]).
Here, as the People correctly concede, the first Taranovich factor weighs in defendant's favor inasmuch as the period of preindictment delay was extensive, exceeding six years. On the other hand, as defendant correctly concedes, the third and fourth factors militate against dismissal of the indictment inasmuch as rape in the first degree is a serious charge for which there is no statute of limitations, and defendant was not incarcerated prior to indictment.
With respect to the fifth factor, defendant contends that the extensive delay affected his ability to locate potential alibi witnesses, thus impairing his defense. But defendant did not pursue an alibi defense at trial. As noted, defendant testified that he had consensual sexual intercourse with the victim at the time and place she claimed the rape took place. There were thus no potential alibi witnesses to be found. Moreover, considering that by defendant's own account the sexual intercourse took place in the woods with no one else around, there were no witnesses defendant could have found to corroborate his testimony that the encounter was consensual. Under the circumstances, we cannot conceive of what defendant could or would have done differently had he been charged in a more timely manner.
In sum, we conclude that defendant's "conclusory assertions of prejudice are insufficient" to demonstrate that his "defense was impaired by reason of the delay" (People v Johnson, 134 AD3d 1388, 1390 [4th Dept 2015], affd 28 NY3d 1048 [2016]), and the complete absence of prejudice in this case weighs most heavily against him (see generally People v Denis, 276 AD2d 237, 249 [3d Dept 2000], lv denied 96 NY2d 782 [2001], reconsideration denied 96 NY2d 861 [2001]).
The remaining factor is the second, which concerns the reasons for the delay. There is no indication that the "delay was caused by any bad faith on the part of the People" (People v Perez, 85 AD3d 1538, 1539 [4th Dept 2011]). Instead, the delay was largely caused by the efforts of the People and law enforcement "to acquire substantial corroborating evidence in order to prove defendant's guilt beyond a reasonable doubt" (People v Nazario, 85 AD3d 577, 577 [1st Dept 2011], lv denied 17 NY3d 904 [2011]). Nevertheless, it is true, as defendant points out, that extensive periods of delay may fairly be attributed to neglect by the People and law enforcement in the investigation. But even assuming, arguendo, that the second factor weighs in defendant's [*3]favor, three of the five factors favor the People, and we thus conclude that the court did not err in denying that part of defendant's omnibus motion seeking to dismiss the indictment on due process grounds.
Finally, we reject defendant's contention that the sentence is unduly harsh and severe.
All concur except Nemoyer, J., who dissents and votes to reverse in accordance with the following memorandum: I dissent because, in my view, defendant was deprived of due process by unreasonable preindictment delay. As the majority explains, that issue requires us to consider the five factors set forth in People v Taranovich (37 NY2d 442 [1975]), i.e., "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay" (id. at 445).
As the majority agrees and the People correctly concede, the first factor weighs heavily in defendant's favor inasmuch as there was a protracted delay of over six years. Based on that delay, "the burden [was] on the prosecution to establish good cause" (People v Singer, 44 NY2d 241, 254 [1978]). The People, however, failed to present a valid reason for the delay under the second factor. As of September 2006, when the prosecution was made aware of DNA evidence linking defendant to the crime, the prosecutor possessed all information necessary to charge defendant, and the record reveals no reason, plan, or deliberate decision to delay defendant's arrest until it was eventually made in January 2013. Instead, the record reflects that the explanation for the over six-year delay was simply inadvertence, which is an insufficient reason as a matter of law (see People v Wheeler, 289 AD2d 959, 960 [4th Dept 2001]). Although the majority suggests that the second factor may not favor defendant because there was no indication of bad faith on the part of the People, the second factor looks for a "reason for the delay," not merely a lack of bad faith (Taranovich, 37 NY2d at 445). Indeed, the Court of Appeals in Taranovich held that the second factor "may be in the appellant's favor" despite the fact that there was no claim of bad faith in that case (id. at 446). Thus, although a lack of bad faith may mean that the second factor "in and of itself" will not warrant dismissal of the indictment (id.), a lack of bad faith does not change the fact that, in this case, the second factor favors defendant.
With respect to the third factor, although the majority seems to limit its analysis to whether defendant was charged with a "serious" crime, that factor more specifically considers the seriousness of the offense in the context of the complexity of the case, i.e., whether the nature of the case explains the delay (see id.; Wheeler, 289 AD2d at 960). Indeed, Taranovich analyzed the seriousness of the offenses charged simply as a means to explain why a prosecution may have taken an extended period of time, explaining that, "[u]pon such a serious charge, the District Attorney may be expected to proceed with far more caution and deliberation than he would expend on a relatively minor offense," and thus the delay could be explained by a prosecutor's attempt to "be more thorough and precise in his [or her] preparation for the trial" of a serious matter (Taranovich, 37 NY2d at 446). In this way, the third factor does not require us to simply examine whether an offense was serious in a vacuum, but rather whether the seriousness of the offense might explain the delay. That makes sense because this issue involves due process concerns, and a defendant does not lose the right to due process merely by virtue of being charged with a serious crime. This case, however, was not a complex matter. The People had obtained a DNA match to defendant as of September 2006 but, rather than proceeding with "caution and deliberation" (id.), the record reflects that the prosecution allowed the matter to sit for over six years largely due to inattention, without any indication of the exercise of prosecutorial discretion or further investigative efforts. Thus, I conclude that the third factor favors defendant.
I agree with the majority that the fourth factor does not favor defendant. With respect to the fifth factor, however, the record reflects that the over six-year delay may have impaired defendant's ability to present testimony that could have supported his version of the incident, or helped establish that he was not the person who the victim alleged had attacked her at a specific time. In any event, the sheer length of the delay in prosecution, in my view, made it more difficult for defendant to support his version of events regarding the incident, which occurred in July 2005, even if he could not establish a precise way in which such impairment was manifested (see generally People v Wiggins, 31 NY3d 1, 13 [2018]). At worst for defendant, I conclude that the fifth factor was neutral or slightly favored him.
Based on the above, where up to four out of the five factors weigh in defendant's favor, I agree with defendant that the over six-year delay deprived him of his right to due process, and I would therefore reverse the judgment, grant that part of defendant's omnibus motion seeking to dismiss the indictment on due process grounds, dismiss the indictment, and remit the matter to Supreme Court for further proceedings pursuant to CPL 470.45. 
Entered: July 1, 2022
Ann Dillon Flynn
Clerk of the Court